1  **PARKER LAW FIRM, P.L.C.**
   _____ ATTORNEYS AT LAW _____
2  141 E. Palm Lane, Suite 111 ◆ Phoenix, Arizona 85004
   P.O. Box 63098 ◆ Phoenix, Arizona 85082-3098
3  Telephone: (602) 257-8100 ◆ Facsimile: (602) 257-8110
   John D. Parker, II #015955
4  Attorneys for Plaintiffs

5

6                    UNITED STATES DISTRICT COURT

7                          DISTRICT OF ARIZONA

8  BRIAN H. SINGER and SANDY SINGER,     )
   husband and wife,                      )    No.
9                                         )
                        Plaintiff,        )
10                                        )    COMPLAINT
   v.                                     )
11                                        )
   DIAMOND MEDIA & MARKETING, INC., an    )
12 Arizona corporation; DAVID SINGER and CORA )
   SINGER, husband and wife; DIAMOND MEDIA )
13 & MARKETING, INC. PROFIT SHARING       )
   PLAN; DOES I through XX, BLACK         )
14 CORPORATIONS A-L, WHITE                )
   PARTNERSHIPS M-Z,                      )
15                                        )
                        Defendants.       )
16 _____)

17     For their causes and complaint against Defendants Diamond Media & Marketing,

18 Inc., an Arizona corporation; David Singer and Cora Singer, husband and wife; Diamond

19 Media & Marketing, Inc. Profit Sharing Plan; Does I through XX, Black Corporations A-L,

20 White Partnerships M-Z, Plaintiffs allege as follows:

21                                   1.

22     Plaintiffs are residents of Maricopa County, Arizona.

23                                   2.

24     Defendant Diamond Media & Marketing, Inc. ("Diamond Media" or the

25 "Company") is an Arizona corporation qualified to transact business in Arizona.

26 . . .

3.

Defendants David Singer and Cora Singer (hereinafter collectively "Individual Defendants") are residents of Maricopa County, Arizona, are married, and the acts alleged herein were done for and on behalf of their marital community, if any.

4.

Diamond Media & Marketing, Inc. Profit Sharing Plan (the "Plan") is an "employee welfare benefit plan" within the meaning of ERISA 29 U.S.C. § 1002(1). Upon information and belief, Defendant David Singer is and was charged with administering the Plan, and is therefore a fiduciary of the Plan, within the meaning of ERISA.

5.

Does I through XX, Black Corporations A through L, and White Partnerships M through Z are fictitious Defendants whose names and identities will be substituted when they become known to Plaintiffs.

6.

This Court has subject matter jurisdiction over the specific jurisdictional statute for acts or omissions of the Plan, and/or its fiduciary, David Singer, under ERISA 29 U.S.C. § 1132(e)(1) and over Plaintiffs' state law claims pursuant to United Mine Workers v. Gibbs, 383 U.S. 715 (1966).

7.

Plaintiff Brian H. Singer is a member of the Plan by virtue of being a former employee of Diamond Media and therefore eligible to receive monetary benefits from the Plan.

8.

All contracts and agreements between the Plaintiffs and Defendants were formed in Maricopa County, Arizona, which is in this District.

. . .

9.

Plaintiff Brian H. Singer was employed by Diamond Media from February 10, 1997 to February 10, 2006. Diamond Media is engaged in the business of producing "infomercial" television advertisements.

10.

At all times relevant, Co-defendant David Singer was the president and sole director of Diamond Media and, up to a point, held 100% of the Company's shares of stock.

11.

Sometime prior to this lawsuit, the Company established the Plan. The Plan was funded by the Company on a discretionary basis at the end of the Company's fiscal year from profits realized by the Company in that particular year.

12.

In March 2002 Brian and co-Defendant David Singer met to discuss business issues. During that meeting, David Singer told Brian that David was "lessening his position" in the Company. Pursuant to that, David verbally promised to Brian that, from the meeting forward, Brian owned 20% of the Company's shares of stock, and that Brian's stock ownership in the Company would, effective January 1, 2003, increase to 30% and effective January 1, 2004, increase to 40% of the Company's shares of stock. David also promised to memorialize the terms and conditions of Brian's shareholder status in a written Shareholder Agreement.

13.

In May 2002 Brian asked David for a draft of the Shareholder Agreement. David promised that the Agreement would be provided "in a day or two."

14.

In reliance upon David's verbal promises, Brian continued working for Diamond Media and, by all accounts, was an outstanding employee for the Company.

15.

In early 2003, David Singer directed Diamond Media to invest in a business that purchases and re-sells repossessed residences, a business unrelated to Diamond Media's core business. Brian was not consulted on this transaction, even though he was a shareholder of the Company.

16.

The repossession business lost money and is now defunct.

17.

In 2004, David Singer directed Diamond Media to invest in a business that published a Christian-oriented newspaper, a business unrelated to Diamond Media's core business. Brian was not consulted on this transaction, even though he was a shareholder of the Company.

18.

Upon information and belief, the Christian newspaper business lost money and is now defunct.

19.

In 2004 or 2005, David Singer directed Diamond Media to invest in an Internet-based business, a business unrelated to Diamond Media's core business. Brian was not consulted on this transaction, even though he was a shareholder of the Company.

20.

In May of 2003, Defendant David Singer cut Brian's salary from $135,000 to $94,000. On May 5, 2004, Brian could no longer work in the Company's offices due to a permanent disability. Despite his disability, Brian worked at home, and drew a salary plus full benefits; however that same year, David unilaterally cut Brian's salary, from $94,000 to $47,000 a year and forced Brian to stop working on Diamond Media's main affairs unless he came into the office, which his disability would not allow. Brian offered to work

1  from home but David told him "forget it." In March of 2005 Brian Singer's salary was cut
2  to $26,000 a year.

3                                    21.

4      In May 2005, in front of family witnesses, David said to co-Plaintiff Sandy Singer,
5  in so many words, "I won't cut you off [Brian], won't fire Brian, but I don't know how
6  you're going to make it on $26,000."

7                                    22.

8      On January 8, 2006 David Singer sent Brian a letter which did not acknowledge
9  Brian was disabled, but notified Brian "I regrettably will no longer provide you a Diamond
10 Media income . . . [y]our salary and insurance will end effective pay period ending
11 February 10 [2006] . . ."

12                                   23.

13     Brian has since discovered he was never issued any shares of stock in the company,
14 despite Diamond Media's and David Singer's promise to the contrary.

15                                   24.

16     The illegal conduct directed toward Plaintiffs caused them to suffer damages for
17 which they are entitled to recover under various legal theories.

18                          **COUNT I**
                       **BREACH OF CONTRACT**
19             **(Against the Individual Defendants and Diamond Media)**

20                                   25.

21     Plaintiffs re-allege each and every allegation contained in Paragraphs 1 through 25
22 as though fully set forth herein.

23                                   26.

24     Diamond Media, through its president, David Singer, promised Brian that he would
25 be a 40% shareholder of the Company's shares of stock, paid $26,000 a year salary plus
26 benefits, in perpetuity and that he would never be fired.

                                      5

27.

Brian performed his duties satisfactorily and was a loyal and trusted employee.

28.

The Company, David Singer, or both of them, breached these promises, when it fired Brian, terminated his salary and benefits and failed to issue him any shares in the company, causing Plaintiffs damages.

29.

As a direct and legal result of the conduct of Diamond Media and/or David Singer, Plaintiffs sustained substantial economic losses, including past and future compensation, and other economic benefits, attorney's fees and litigation expenses.

**COUNT II**
**WRONGFUL TERMINATION**
**(Against Diamond Media)**

30.

Plaintiffs re-allege each and every allegation contained in Paragraphs 1 through 30 as though fully set forth herein.

31.

Diamond Media's conduct, in terminating Brian Singer, was wrongful because (a) the Company knew of its promises to Brian of continued employment and compensation; (b) knew Brian was disabled, but (c) terminated Brian and his compensation package.

David Singer has admitted on several occasions, to Brian, that the Plan has been mismanaged.

32.

As a direct and legal result of the conduct of Diamond Media, Plaintiffs sustained substantial economic losses, including past and future compensation, and other economic benefits, attorney's fees and litigation expenses.

. . .

**COUNT III**
**NEGLIGENT OR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(Against Diamond Media and the Individual Defendants)**

33.

Plaintiffs re-allege each and every allegation contained in Paragraphs 1 through 33 as though fully set forth herein.

34.

The conduct, acts and omissions by Diamond Media and David Singer caused Plaintiffs to suffer physical and mental health problems.

35.

In so acting as alleged herein, Diamond Media and David Singer intentionally or negligently inflicted severe emotional distress upon Plaintiffs, acted with a conscious disregard for Plaintiffs' known rights, or carelessly or intentionally inflicted severe emotional distress upon Plaintiffs, causing them damage.

**COUNT IV**
**FRAUD**
**(Against Diamond Media and the Individual Defendants)**

36.

Plaintiffs reallege each and every allegation contained in Paragraphs 1 through 36 above, as if fully set forth herein.

37.

Based on the specific allegations pled above, Defendants Diamond Media and David Singer made misrepresentations and omissions to Plaintiff Brian Singer to induce him into continuing to work for the Company.

38.

These misrepresentations and omissions were material, and Plaintiff relied and acted upon these misrepresentations and omissions to his detriment.

. . .

39.

Defendants Diamond Media and David Singer intended that Plaintiff rely and act upon the truth of such representations, and in ignorance of omissions made to Plaintiff, and as a direct and proximate result of these misrepresentations and omissions, Plaintiffs have been damaged in an amount to be proven at trial but not less than $1,000,000.

40.

Upon information and belief, Defendants Diamond Media and David Singer acted with an evil mind, with an intent to harm the economic interests of Plaintiffs, and their conduct was so outrageous as to the rights and interests of Plaintiffs that punitive damages should be ordered to punish them and to deter others from similar conduct.

**COUNT V**
**(Negligent Misrepresentation Against Diamond Media and the Individual Defendants)**

41.

Plaintiffs reallege each and every allegation contained in Paragraphs 1 through 41 above, as if fully set forth herein.

42.

Defendants negligently made false representations and omissions to Plaintiffs to induce him into continuing to work for the Company.

43.

Defendants had a duty to disclose to Plaintiffs that these representations were not true.

44.

Defendants knew or should of known that said representations were false and failed to exercise reasonable care in communicating that information.

. . .

45.

Plaintiffs justifiably relied upon said representations and omissions and have suffered damages as a direct and proximate result of such acts of Defendants.

**COUNT VI**
**BREACH OF FIDUCIARY DUTY**
**(Against the Individual Defendants)**

46.

Plaintiffs reallege each and every allegation contained in Paragraphs 1 through 46 above, as if fully set forth herein.

47.

David Singer, as president, sole director and controlling shareholder of Diamond Media, had a fiduciary duty to Brian to safekeep and not squander or waste corporate assets.

48.

David Singer breached his fiduciary duty to the Company and its shareholders, by investing in companies unrelated to the Company's business, without consulting with Brian, and causing the Company to lose money in the process.

49.

As a direct and proximate result of David Singer's acts and omissions, Plaintiffs have been damaged in an amount to be proven at trial but not less than $1,000,000.

50.

Upon information and belief, Defendant David Singer acted with an evil mind, with an intent to harm the economic interests of Plaintiffs, and his conduct was so outrageous as to the rights and interests of Plaintiffs that punitive damages should be ordered to punish him and to deter others from similar conduct.

. . .

. . .

**COUNT VII**
**(Breach of the Covenant of Good Faith and Fair Dealing Against Diamond Media and the Individual Defendants**

51.

Arizona law implies a covenant of good faith and fair dealing in all contracts between parties entered into in the State of Arizona.

52.

As a result of the actions of the Defendants, and each of them, set forth herein above, Defendants have violated the implied covenant of good faith and fair dealing contained in the agreements made between Plaintiffs and Defendants, and as a result thereof, Plaintiff is entitled to damages.

**COUNT VIII**
**VIOLATION OF ERISA Section 1104 (A)(1)**
**(Against the Individual Defendants and the Plan)**

53.

Plaintiffs reallege each and every allegation contained in Paragraphs 1 through 52 as though fully set forth herein.

54.

Singer violated ERISA 28 U.S.C. § 1104(a)(1) by admittedly mismanaging assets.

55.

Upon information and belief, Defendant David Singer acted with an evil mind, with an intent to harm the economic interests of Plaintiffs, and his conduct was so outrageous as to the rights and interests of Plaintiffs that punitive damages should be ordered to punish him and to deter others from similar conduct.

**PRAYER**

WHEREFORE, Plaintiffs Brian H. Singer and Sandy Singer pray for judgment against Defendants Diamond Media & Marketing, Inc., an Arizona corporation; David Singer and Cora Singer, husband and wife; Diamond Media & Marketing, Inc. Profit

Sharing Plan; Does I through XX, Black Corporations A-L, White Partnerships M-Z, jointly and severally, as follows:

    1.    As to Counts One through Seven, an amount to be proven at trial, but not less than $1,000,000 in compensatory damages on each claim; and not less than $3,000,000 in punitive damages on those claims where punitive damages are sought;

    2.    As to Count Eight, Defendants be ordered to restore to Plaintiffs the full amount of Brian's accrued benefits in the Plan, that would have accrued but for David Singer's breach of his fiduciary duties to the Company, the Plan and its participants (including Brian Singer), in an amount to be proven at trial;

    3.    As to all Counts, interest on awarded sums at the maximum legal rate allowed by law, according to proof as to the date(s) of accrual therefrom;

    4.    As to all Counts, Plaintiffs be granted their taxable costs and attorneys' fees; and

    5.    Such other and further relief as this Court may deem proper under the circumstances.

    DATED this 7th day of January, 2008.

                  PARKER LAW FIRM, P.L.C.

                  By:   /s/ John D. Parker, II
                         John D. Parker, II
                         P.O. Box 63098
                         Phoenix, AZ  85082-3098
                         Attorneys for Plaintiffs

K:\1419\071262\Complaint